Filed 8/2/13  In re Shyann K. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re SHYANN K. et al., Persons Coming Under the Juvenile Court Law. | B245310 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER E. et al<br><br>Defendants and Appellants. | (Los Angeles County Super. Ct. No. CK95966) |

APPEAL from an order of the Superior Court of Los Angeles County, Margaret Henry, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant Christopher E..

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant Helen F.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Kimberly A. Roura, Associate County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Appellants Helen F. (mother) and Christopher E. (father) appeal a dispositional and jurisdictional order of the juvenile court. The order sustained the juvenile dependency petition of respondent Los Angeles County Department of Children and Family Services (the Department), declared Shyann K. and Deja K. dependents of the court, and removed the children from mother's and father's physical custody.

We conclude that there was substantial evidence supporting the juvenile court's jurisdiction findings. We further conclude that the parents' appeal of the dispositional order is moot because the children have been returned to their custody. Finally, we reject mother's argument that the Department failed to comply with the Indian Child Welfare Act of 1978 (ICWA)(25 U.S.C. § 1901 et seq.). Accordingly, we affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Children's Family*

Helen is the biological mother of Shyann and Deja. Shyann's presumed father is Ricky K. Deja's presumed father is Christopher. Shyann and Deja were 14 and 12 years old, respectively, when this action commenced.

Mother and the children have had no contact with Ricky since the fall of 2010, and do not know where he is residing. Although mother contends she wishes to divorce Ricky, she claims she has not been able to do so because she does not know where to serve him with a divorce petition.

2. *Previous Referrals*

From October 2001 to April 2010, the Department received seven referrals regarding this family, three of which involved Ricky's alleged misconduct. While the record is somewhat unclear, it appears the only substantiated referral was made in January 2010. In that case, Ricky was accused of sexually abusing a child known as "Tijera." The Department opened a voluntary family maintenance case.

2

3. *Shyann's Mental Health and Behavioral Problems and Deja's Behavioral Problems*

Shyann has had behavioral and mental health problems for many years. She has received psychological therapy for her "mood disorder" since she was in elementary school, and has been prescribed Abilify. At one point she was briefly hospitalized after making statements regarding suicide. She has had problems with truancy and behavior in school and has been expelled from one school. Shyann has used marijuana, at one point as much as three times a week. According to a psychological evaluation dated September 2, 2011, there are many causes of Shyann's troubles, including Ricky's abandonment of the family, mother's financial problems, and the sexual abuse allegations against Ricky.

In January 2012, Shyann was "sneaking out" of the house and going to parties which mother did not approve. At times, Shyann stayed away from home for several days. In order address this problem, mother sent Shyann to live with mother's sister in the Mojave desert for the rest of the school year. When Shyann returned home in June 2012, she no longer went to unapproved parties.

Deja, too, has had behavioral problems, though not as severe as Shyann's. By October 2012, Deja had entered into a "contract" with her school regarding her behavioral problems.

4. *The Family's Financial Problems*

Except for the period Shyann lived with her maternal aunt, Shyann and Deja lived with mother, father and their adult brother Jaylan in a house in Los Angeles from approximately September 2011 until the Department detained the children. Mother received assistance for her family's housing pursuant to Section 8 of the Housing Act of 1937. Under her Section 8 contract, mother was required to pay her landlord $21 per month. Mother, however, paid the landlord an additional $487 per month in rent, despite her contract.

3

When this action commenced, the family was experiencing financial difficulties. Mother was unemployed, and received $500 in food stamps and $465 in cash aid per month. The record indicates that father was employed and contributed to family expenses, but it does not indicate the amount of father's wages or contribution. Jaylan received monthly "survivor benefits."

In June 2012, the Department of Water and Power (DWP) turned off the running water in the family's home. The DWP did so because the family had failed to pay an outstanding balance in excess of $3,000.

5.      *The Detention of the Children*

On August 31, 2012, the Department received a referral for general neglect. The person making the referral alleged that the family house did not have running water.

Children's social worker L. Jones investigated the mater. On September 4, 2012, Jones visited the family home. She observed that the home "had an odor" and that the "kitchen had dirty dishes and a distinct odor associated with the old dishwater being held in the sink." Mother conceded that since the family lost running water in the summer, "her children are not able to wash up daily."

On October 6, 2012, Jones made an unannounced visit to the family home. She noticed a "foul odor" coming from the house as she approached. Father opened the front door but refused to allow Jones access to the home. Jones observed the home was "cluttered and there was clothes, old food and other effects on the floor."

On several occasions, Jones interviewed Shyann, Deja, mother, and staff at the children's school. Jones found that both of the children were not well groomed and "emitted an odor." According to Shyann, she and Jaylan were responsible for obtaining water from a nearby church, which the family used for personal hygiene, cooking and flushing toilets. Shyann stated that "the smell in her home is caused by the toilets, as waste is left in the toilet for days at a time as there is usually not enough water in the home to flush the toilet." Deja indicated that since summer time, the family could not shower or bathe. Rather, they warmed water on the stove and "washed off."

4

In their first interview, on September 4, 2012, both Shyann and Deja indicated that there was food in their home and that they had access to food. The children told a different story in their interviews on October 9, 2012. Shyann stated that mother and father "hoard" food in their bedroom and did not allow the children access to it. Deja "reported that she did not have food in the home, but her mother was going to receive a food stamp payment shortly." School staff reported that the children were arriving at school on Monday mornings "hungry and requesting additional food [from] cafeteria staff."

On October 9, 2012, at the end of the school day, Shyann and Deja were taken by the Department into protective custody.

6.      *The Dependency Petition and Initial Juvenile Court Hearing*

On October 12, 2012, the Department filed a juvenile dependency petition. The petition alleged that the juvenile court had jurisdiction over the children pursuant to Welfare and Institutions Code section 300, subdivision (b).[1]

The subdivision (b) allegations had three counts, one of which subsequently dismissed and not at issue here.[2] Count b-1 was against mother and father and based on

---

[1]      All future statutory references are to the Welfare and Institutions Code. The petition also alleged the juvenile court had jurisdiction over the children pursuant to section 300, subdivision (j), but this allegation was subsequently dismissed.

[2]      Count b-2 was against mother and based on her alleged failure to provide Shyann with necessary medical treatment.

the alleged "unsanitary" conditions of the family home.[3]  Count b-3 was against mother and based on her alleged failure to provide the children with adequate amounts of food.[4]

On the same day the petition was filed, the juvenile court held a hearing on the matter.  At the hearing, the children's appointed counsel, Chris Taylor, stated:  "I don't believe there's a risk for these children in the care of their mother."  Taylor asked that the children be released to mother.

The juvenile court, however, found that there was a prima facie case for detaining the children, and thus ordered that the children remain in foster care.  Addressing mother, the court stated:  "The court would love to release the children to you [mother] but your home has to be in a liveable condition and [the children] deserve to have water and it's very hard to live without water or lights."[5]

At the hearing, mother indicated that Shyann's presumed father, Ricky, may have Navajo ancestry.  When the court asked mother whether she knew if anyone in Shyann's family was registered in the Navajo tribe, however, mother stated:  "I don't know much about that side of the family."  The court ordered the Department to investigate whether the ICWA applied to Shyann.

---

[3]     As amended, count b-1 stated:  "Since June 12, 2012, [the children's home] has been in an unsanitary condition, including no running water.  On occasion the kitchen sink has been clogged with stale water and there has been rotting food on the floor and clutter throughout the home and feces and urine have been backed up in the toilet, causing a foul odor to permeate the home, and the children's bodies and clothing have been dirty and emitted a foul odor.  Such an unsanitary home environment established by [mother and father] endangers the children's physical health and safety and places the children at risk of physical harm and damage."

[4]     As amended, count b-3 stated:  "[Mother has] failed to provide the children with adequate amounts of food, resulting in the children going hungry.  Such failure on the part of the mother to provide the children with adequate amounts of food endangers the children's physical health and safety and places the children at risk of physical harm and damage."

[5]     Although there is evidence that at one point the power to the family's house was scheduled to be shut off, there is no evidence that this occurred.

6

7. *The Department's Post-Petition Investigation*

In mid and late October, 2012, dependency investigator S. Williams interviewed mother, father, Shyann, Deja and Jaylan about the allegations in the petition. Except for acknowledging that the running water in the home had been turned off, father, mother, Shyann and Jaylan each denied virtually all of the allegations in petition, or stated that they were greatly exaggerated. Shyann specifically denied that there was ever feces or urine left in the toilet. When asked about the allegations in the petition, Deja would not speak or look at Williams. Both Shyann and Deja stated that they wanted to "go home" and live with mother and father.

8. *The November 1, 2012, Hearing*

On November 1, 2012, the juvenile court held a jurisdictional and dispositional hearing. Mother was called as the sole witness. She testified that she was getting assistance from "HEAP" (Home Energy Assistance Program), a program that assists lower income people obtain utility services. In the meantime, mother stated, she and father went to the corner store two or three times a day to fill five-gallon jugs with water. Mother also testified that she was employed at the time.

Attorneys representing mother, father and the children argued that the court should dismiss the petition. The children's lawyer stated: "Is this an ideal living situation? Of course not. No one wants this situation for these children and for this family. But this is a family that was making it work the best that they could. They were going to get water every day in order to meet the needs of bathing and for food purposes." The Department requested that the petition be sustained in its entirety.

The juvenile court amended the petition according to proof and sustained counts b-1 and b-3, which related to the unsanitary conditions in the family home and lack of food, respectively. (See fns. 3 and 4, *ante*.) After reading count b-1, the court stated: "I don't think that the home was like that every day. I don't think it was like that constantly. I don't think the children were unable to take a bath or shower every day. It was just too many days when they couldn't. And, no, they should not be in the home without running water."

The juvenile court also declared Shyann and Deja dependents of the court, removed the children from their parents' physical custody pursuant to section 361, subdivision (c), and ordered the Department to provide family reunification services, including using its "best efforts to assist the parents to get running water in the home." With respect to the disposition, the court stated: "I'm not going to return the children until there's running water in the home and the Department has inspected and made sure that there is adequate food for the children in the home . . . ."

Both mother and father filed timely notices of appeal of the November 1, 2012, order.

9.     *March 21, 2013, Order*

Pursuant to the Department's request, we take judicial notice of the juvenile court's March 21, 2013, order, which was entered after this appeal was taken. (Evid. Code, §§ 452, 459.) The order states that Shyann is placed in mother's custody, and Deja is placed in mother's and father's custody.

## CONTENTIONS

Mother and father argue that the there was no substantial evidence supporting the juvenile court's jurisdictional findings. They also contend there was no substantial evidence supporting the court's dispositional order removing the children from their physical custody. Additionally, mother contends that the Department failed to comply with the ICWA by not providing notice to the Navajo tribe that Shyann might be a member.

## DISCUSSION

1.     *There Was Substantial Evidence Supporting the Juvenile Court's*
       *Jurisdictional Order*

We review the juvenile court's jurisdictional findings under the substantial evidence test. (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161.) "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) In determining whether there is

8

substantial evidence, " ' "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773, citing *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

We do not consider whether there is a substantial conflict of the evidence. Rather, we must consider whether there is substantial evidence *in favor of the respondent*. (*In re Stephen W.* (1990) 221 Cal.App.3d 629, 644, fn. 12.) Where such substantial evidence is present, " 'no matter how slight it may appear in comparison with the contradictory evidence,' " the judgment must be affirmed. (*Ibid*.)

Section 300, subdivision (b) provides a child comes within the jurisdiction of the juvenile court if the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" as a result of a parent's failure or inability to adequately supervise or protect the child. The juvenile court found that at the time of the November 1, 2012 hearing, there was a substantial risk that Shyann and Deja would suffer from serious physical harm as a result of (1) the unsanitary conditions in mother and father's home and (2) the lack of adequate food in the home.

When viewed in a light most favorable to the juvenile's jurisdictional findings, the evidence in this case indicates that there were unsanitary conditions in mother and father's home that endangered the children. Because there was no running water in the home, the family could not regularly flush their toilet. This led to feces and urine remaining in the toilet for days at a time. Additionally, the family was frequently unable to wash dishes, sometimes leaving dirty water in the sink for long periods of time. The un-flushed waste and stagnant dishwater created an unwholesome odor that could be smelled from outside the house. Further, Shyann and Deja were unable to shower and keep themselves clean. Social workers and school officials stated the children emitted an offensive odor. After the Department got involved, school officials reported that the girls' hygiene was declining.

9

Mother and father cite to evidence purportedly showing that the Department exaggerated the unsanitary conditions in their home, or that such conditions were wholly or partly remedied by the November 1, 2012, hearing. This evidence mainly consisted of statements family members made to the Department after the children were detained. The juvenile court, however, was free to disregard or discount the family members' later statements as unreliable, and motivated by a desire to reunite the family. As stated *ante*, we cannot reweigh the evidence, and must view it in a light most favorable to the juvenile court's findings.

There was also substantial evidence supporting the juvenile court's finding that mother and father were unable to provide the children with adequate amounts of food. In their October 9, 2012, interviews, both Shyann and Deja stated that they did not have access to food in their house. Likewise, school officials expressed concern that the children repeatedly arrived at school on Monday mornings hungry due to insufficient food in the home over the weekends.

Mother and father argue that the only reason they had unsanitary conditions and inadequate food was their poverty, and that juvenile court cannot assert jurisdiction over their children based on poverty alone. We disagree with the premise of their argument. There was substantial evidence from which the juvenile court could have inferred that mother and father did not take responsibility for providing the girls with basic needs, including a sanitary home and adequate food. For example, Shyann told a social worker that mother and father were hoarding food to the exclusion of the children. Similarly, instead of filling jugs of water from a nearby church themselves, mother and father imposed that responsibility on Shyann and her older brother. The court thus could have reasonably concluded that it was not poverty alone that prevented the parents from meeting their children's needs.

We acknowledge that the evidence supporting the juvenile court's assertion of jurisdiction was not overwhelming. This was a difficult decision. We cannot say, however, that no reasonable judge would have asserted jurisdiction under the facts and circumstances of this case. We thus hold that there was substantial evidence supporting the juvenile court's jurisdictional findings.

2.      *The Appeal of the Dispositional Order is Moot*

Mother and father argue that the dispositional order should be reversed because there was no substantial evidence supporting the juvenile court's decision to deny them physical custody of the children. "When no effective relief can be granted," however, "an appeal is moot and will be dismissed." (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315.) Because the children have been returned to mother and father's physical custody, their appeal of the dispositional order is moot.

3.      *ICWA Notice Was Not Required*

The ICWA requirements must be followed when an "Indian child" is involved. (*In re O.K.* (2003) 106 Cal.App.4th 152, 155.) An "Indian child" is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

One requirement of the ICWA is notice. The ICWA provides: "In any involuntary proceeding in a State court, *where the court knows or has reason to know that an Indian child is involved*, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a), italics added.)

11

Here, at the initial hearing in the case, mother vaguely stated that Shyann's presumed father, Ricky, may have Navajo ancestry. When the juvenile court inquired about the matter, she could provide no detailed information. Mother did not state that Ricky or anyone in Ricky's family was a *member* of the Navajo tribe or was eligible for membership. We hold that mother's statements regarding Ricky's possible Navajo ancestry did not trigger the Department's duty to notify the tribe under the ICWA. (See *In re Z.N.* (2009) 181 Cal.App.4th 282, 298 [mother's belief that one of her grandmothers "was Cherokee" and another "part Apache" did not trigger duty to notify tribes].)

## DISPOSITION

The order of the juvenile court dated November 1, 2012, is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

CROSKEY, J.